### NEAL et al. v. HOLT et al.
### No. 4395.

Court of Civil Appeals of Texas. Texarkana. Feb. 8, 1934.

Rehearing Denied March 1, 1934.

J. W. McDavid, of Henderson, R. H. Whilden, of Houston, J. M. Holmes, of St. Louis, Mo., and Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., for appellants.

Ed Yarbrough, of Henderson, J. L. Goggans, James F. Gray, and T. Whitt Davidson, all of Dallas, for appellees.

LEVY, Justice (after stating the case as above).

In order to render a sale by a guardian of a ward's real estate effectual to confer a valid right, the probate court must have acquired active jurisdiction by the presentment of a proper application by the guardian of the estate. The same rule applies alike to es-

tates of a minor and estates of persons of unsound mind. The application for sale by the guardian becomes the first step or the commencement of the proceeding for the court to acquire and exercise jurisdiction. What shall be the purposes for which the guardian may make application for order of sale of real estate is prescribed by the statutes. Articles 4195, 4196, R. S. In the instant case the guardian by his application undertakes, first, to disclose to the probate court the following facts: That before the guardianship proceedings had been instituted, and while he was in a state of mind "not legally capacitated" to do so, William S. Holt, the person of unsound mind, for a consideration executed a deed conveying his undivided interest in the land to C. M. Holt, who subsequently deeded it to W. F. Neal, and that W. F. Neal actually paid full consideration to C. M. Holt for it. Next following is stated the purposes of the sale, with recommendation of the guardian in respect thereto, namely: That "it now appears that the conveyance as to the interest of said ward, William S. Holt, in the two tracts of land herein described is void and of no effect," and, for that reason, "your petitioner, Guardian of the Estate of William S. Holt, is of the opinion that the said interest of her ward, William S. Holt, should be legally conveyed to said W. F. Neal, who is rightfully and legally entitled to ownership and possession of said interest, having discharged his obligation by payment of all indebtedness against him, the said W. F. Neal, for said interest." The prayer asked the probate court specially for grant of authority to effectuate the purposes stated, empowering the guardian "to convey the interests of the said ward" in the land and "to sell for cash" by implication to the named subsequent purchaser W. F. Neal. Upon that application the probate court made and entered an order authorizing the guardian to make sale of the ward's interest in the land "at private sale for cash." The order recites the purposes for which the sale was authorized to be:

"It further appearing to the court that the sale of the real estate of said ward is advisable and necessary and that said application should be granted, and that it is more advantageous to said estate to sell the land mentioned in said application."

The order recites no other purposes than above quoted. It is plain from the language of the application of the guardian that the interest in the land of the insane ward was not asked to be sold for one of the purposes mentioned in the statutes, either of support

and maintenance, or payment of his debts or liens against the property or taxes, or because the land in which the ward has an undivided interest had better be sold than held undivided. Article 4195, R. S. And it is manifest from the order of the probate court that the probate court never granted to the guardian the power to sell the land for any one of the purposes mentioned therein. The statute does not by its terms confer, besides the purposes specially mentioned, the additional power to make a sale or order a sale of the real estate of an insane person whenever it is made to appear to the court that such sale would be "advisable and necessary" or "advantageous to said estate." It is not a provision of the statute that the guardian may sell, and the probate court may order sale of, the real estate, or any part of it, of the lunatic whenever the interest of the lunatic would be materially or essentially promoted thereby. And, further considering the circumstances affirmatively disclosed in the guardian's application, it may not be held that the particular real estate mentioned was at the time of the application property of the estate which had passed into the possession of the guardian and under the control and supervision of the guardian and the probate court. It was not under the immediate administration of the guardianship. There had been conveyance of the land by the insane person himself previous to the guardianship, and the purchaser under the grantee was holding actual possession thereof. The requisites or essentials of contracts generally apply to contracts of insane persons. The rule is that a contract, and as truly a deed, of an insane person entered into prior to the appointment of a guardian, is not conclusively void. A deed of an insane person so made may only at most be deemed voidable. Williams, Guardian, v. Sapieha, 94 Tex. 430, 61 S. W. 115, and numerous other cases following that case.

The title would stand in the grantee until such grantor disagrees to the transaction upon sanity. And, in legal effect, until rescinded by judicial action brought for the purpose, the apparent legal title stood, not in the lunatic ward, but in the grantee of the deed or the purchaser under him. The guardian, under the statutory authority to take possession of all property belonging to the ward, may be deemed to have the incidental power to bring suit to rescind the voidable sale made by his ward. Article 4168 expressly gives the guardian the right to recover possession of all property to which the ward has a "title or claim." But until the neces-

sary steps are taken of rescission by suit and decree the land could not be regarded as within the possession of the guardian and under the immediate control and supervision of the guardian and the probate court. Therefore, in the view of such legal situation of the land and the terms of the guardian's application for sale, it may not be held that the land itself was in the possession and under the authority and jurisdiction of the guardian and the probate court subject to contract or conveyance in respect thereto by the guardian, or a purpose was presented for which a sale is authorized by the statute.

 Reasonably construed, the application of the guardian and the order of the probate court thereupon must be considered as in the prime purpose of empowering the guardian to make to the subsequent purchaser, W. F. Neal, a guardian's deed to the same land conveyed by the insane ward previous to the guardianship, but while he was insane. There was to be a new sale upon a new consideration, in confirmation or affirmation of the previous deed by the ward. The rescission or interference with the previous sale by the insane person was in no wise sought. The intention was, as plain as any language could possibly be, of making absolutely effectual through a guardian's deed upon a consideration the previous sale by the insane ward. Such purpose for a sale is not authorized or derived from the statute. And it is believed the authority of the probate court to order a conveyance under guardian's deed of the land to effectuate the purposes stated is not fairly implied. It is not doubted that a voidable deed may be rescinded in a suit brought for the purpose by the grantor himself when restored to reason, or by his guardian or legal representatives. The express authority is conferred upon the guardian to reduce all property of the ward to possession and to take control and supervision thereof. Such proceeding is merely to conserve the estate of the ward, by destroying voidable deeds, and retaining the property. But there is a distinction between a disaffirmance or avoidance of a voidable deed and a ratification or valid affirmation thereof; the effect of ratification or affirmance being to shut off the right to disaffirm, and making the previous conveyance valid and binding. The right of affirmance is a personal right of a minor or an insane person, not exercisable during the existence of his disability, but upon the removal of the disability, of the minor becoming of age and the insane person restored to sanity. The right of election to do so rests solely with such insane person upon removal of the disability. And, in the absence of express statutory provision making it the subject of a probate sale, neither the guardian nor the probate court could sell or dispose of the right, as in its nature of a right in real estate, to disaffirm and recover back the land. And it is concluded that, in the absence of express statutory provision, neither the guardian or the probate court, nor all together, can ratify or confirm a conveyance of land by the ward made previous to the guardianship, but while he was insane. The powers of the probate court, in respect to the estates of minors, and as truly estate of a person of unsound mind, are all conferred by statute. Whatever the statute authorizes the probate court to do, it may rightfully do. And it is as certainly plain that, if the probate court orders a sale of land when the circumstances do not exist, which, under the law authorizes it to do so, it acts, in doing so, without authority. If the order of sale was a nullity, the confirmation of such sale could not legalize it. It was clearly within the power of the probate court, and the district court upon appeal sitting in probate, to set aside and vacate the orders upon the petition of the guardian. Article 4328, R. S. And, in another point of fact, as found by the trial court, as respects the purchaser, there was failure of compliance with the terms of the sale, requiring as to him the setting aside of the order of confirmation of the sale of the ward's land. It is expressly provided by the statute as a prerequisite of conveyance to the purchaser the compliance by the purchaser with the terms of purchase. Article 4220, R. S.

 The further and final question arises of whether or not the Shell Petroleum Corporation is in the position of a bona fide purchaser, and can set up such defense against the exercise by the probate court of jurisdiction to set aside the probate orders in controversy for legal invalidity. The most general statement of the doctrine of bona fide purchaser describes the purchase as one made in good faith for a valuable consideration and without notice. The purchaser may pay a valuable consideration, act in good faith, and yet he may have notice of matters or circumstances which vitiate the title of the immediate predecessor under whom he claims. It is an elementary doctrine, therefore, that, independently of valuable consideration and of good faith, notice will destroy the character of a bona fide purchaser and defeat the protection otherwise given to it. It specially

appears, by affirmative finding of the trial court, that the Shell Petroleum Corporation, through its representatives, "prior to the time it paid W. F. Neal $2,500.00 for an oil and gas lease on this property," had actual notice, through abstracts of title, of the lunacy proceedings, the contents of the guardian's application, and the orders of sale and confirmation. By such circumstances notice would be charged of adjudication of insanity of the ward, an order of sale and sale under it of the ward's land for purposes not authorized by statute, a previous sale of the same land by the ward before guardianship, although while insane. These facts, all apparent upon the probate record, would show and give notice that the probate court was not authorized to act as it did act. It could not be held that a sale in conformity with the order and a formal order of confirmation would pass the title to the purchaser, who was the grantor of the Shell Petroleum Corporation. The jurisdiction of the probate court was never rightfully called into exercise. Can the defense of bona fide purchaser be made available in the probate proceeding as a remedy against the vacation of the invalid probate orders? The doctrine of protection to a bona fide purchaser is not a rule of property, but is merely a rule of inaction. 2 Pomeroy, Eq. Jur. (14 Ed.) § 743. It is only available by way of defense, and enforces no right and does not determine the question of title between the parties. It means that equity will refuse to interfere to aid the plaintiff in his suit, because, under the circumstances of the case, it would be unconscientious for him to have what he is seeking to obtain. Id., § 738. It seems to be the rule that whenever the orders of sale of the probate court are voidable through irregularities, which do not affect the validity or fairness of the sale, the probate court may, upon the plea of innocent purchaser, in its discretion either decline to set aside and vacate the merely voidable order or set it aside upon the condition attached of refund of the purchase money paid for the ward's property. Kendrick v. Wheeler, 85 Tex. 247, 20 S. W. 44. The sale emanating from probate proceedings which are merely voidable, and the estate having passed to a subsequent bona fide holder by an apparently valid title, the principles of equity in clear conscience would sustain the claim of the subsequent bona fide purchaser in not setting aside the order of sale of the ward's property, or in canceling the order of sale, which has the legal force and effect of reclamation of the land from the purchaser, to require refund of the purchase money. Upon such a state of facts the ward cannot, as a matter of clear right, have the sale set aside, although irregularities are shown. There is complete and effectual execution of the powers given to the probate court of administration upon the land. In the present case, though, the probate orders in controversy were not merely voidable, but were void as without the jurisdiction of the probate court to entertain and make. The right to relief, as to this defense, cannot be rested solely on the ground that the subsequent purchaser and his grantor innocently dealt with the property under guardianship administration. If the guardianship orders were void, the subsequent purchaser nor his grantor would not acquire title or equitable right in the land. They would acquire no interest or estate in virtue of guardianship proceedings that in good conscience should prevail against the claim of the ward who is the legal innocent owner. Such persons would not have a legal estate to protect. There is no equity to deny the setting aside of the order of sale and effect the reclamation of the land to the ward. Quoting from 2 Pomeroy, Eq. Jur. § 735: "When the original owner has done or omitted something by which it was made possible that his property should come into the hands of a bona fide holder by an apparently valid title, it may be just to regard him as estopped from asserting his ownership, and thus to protect the subsequent purchaser. But when the prior legal owner is wholly innocent, has done and omitted nothing, it certainly transcends, even if it does not violate, the principles of equity to sustain the claims of a subsequent and even bona fide purchaser."

The case of Halbert v. Heirs of Young (Tex. Sup.) 6 S. W. 747, 748, would seem to indicate the real rule which would entitle the protection of bona fide purchaser to be "that the orders and decrees of the probate court for Dallas county, while voidable, were not void."

It is here noticed, in order to avoid misconception of the extent of the ruling herein, that the claim of W. F. Neal and his lessee, the Shell Petroleum Corporation, under the deed from the insane person made before guardianship proceedings were begun, is not in any wise involved in this controversy or affected in any particular by the ruling herein. Such deed and such title thereunder as the grantees may have acquired does not arise under or out of the guardianship proceedings.

It is believed the trial court has correctly decided the case, and the judgment is accordingly affirmed.