**SIMPSON v. BOOTH et ux.**

No. 13213.

Court of Civil Appeals of Texas. Dallas.

June 12, 1942,

Rehearing Denied July 18, 1942.

,

J. L. Turner, of Dallas, for appellant.

E. P. Bryan, Ross M. Scott, Currie McCutcheon, and Geo. W. Allison, all of Dallas, for appellees.

BOND, Chief Justice.

This suit is in trespass to try title, for cancellation and annulment of certain proceedings in the Probate and District Courts of Dallas County, Texas, and for damage. We submit a review of the procedure in chronological order, emphasizing important disclosures by italics, by which this insane ward's property was attempted to be sold and her estate completely dissipated. It is evident that the proceedings were a preconceived fraudulent design to divest the Probate Court of Dallas County of its function to administer the estate of the insane ward, for the purpose of dissipating same to the defendant's benefit.

In 1902, Frank Booth and Annie Booth were married and continued to live together as man and wife for more than twenty years, and during that time, they acquired, by their joint efforts, 36 acres of land, prominently located near the City of Dallas, upon which they made their home. In 1922, Annie Booth was, by the County Court of Dallas County, adjudged insane, resulting in her commitment to a State institution for the insane, in which she is now a confined lunatic. Frank Booth testified that Annie Booth, *"before she went crazy,"* helped him accumulate the 36 acres of land in controversy.

In December, 1926, the husband instituted suit in a district court of Dallas County to annul and hold for naught the marriage status then existing between himself and Annie Booth, based solely on the ground that, at the time he and his said wife made and entered into the marital covenant, the wife was then of unsound mind and, in consequence, incapable of entering into the marital union; and in that suit, he declared that the said 36 acres of land was the joint property of the two, each owning an undivided one-half interest therein, describing it as being located 11½ miles from Dallas County Court House, and on a state highway. No partition of the land was sought. On February 21, 1927, the District Court of Dallas County, in disregard of the doctrine of condonement, evidenced by the spouses living together as man and wife for more than twenty years, entered an order, or judgment, annulling the marriage and restoring to each of the parties all the rights and privileges of single persons, and adjudging the 36 acres of land the joint property of the two, each owning an undivided one-half interest therein.

Soon after the marriage annulment, in March, 1927, Frank Booth, by and through the aid and assistance of his own attorney, made application to the Probate Court of Dallas County for the appointment of one E. W. Broadhurst as guardian of the person and estate of Annie Booth, a non compos mentis; alleging "* * * that she has an estate situated in the County of Dallas, and the State of Texas, of the probable value of $2,000.00; that the said Annie Booth is without a lawful guardian of her person and estate; that the said Annie Booth was heretofore a married woman; that she and her husband are divorced and that a guardian for her estate is necessary, and that E. W. Broadhurst is in no way disqualified, and is a proper person to act as guardian of the estate of said lunatic." On this application, the Probate Court appointed Broadhurst and set his bond at $500, not sufficient in amount for a guardian of her person and estate (Arts. 4140, 4141) ; and after qualifying, the said guardian, aided and assisted by Frank Booth and his said attorney, immediately made application to said court for an order authorizing him to institute suit in a proper court for partition of the land belonging to his said ward; and, in the alternative, that " * * * in the event that said land is not capable of partition, and so found by the court, after due consideration, then that the same be sold and the proceeds thereof be protected *in accordance with the statute."* On April 9, 1927, the Probate Court entered an order authorizing the guardian to sue for partition and division of the estate and therein expressly directed "that in the event the evidence shows that said partition cannot be equitably made so as to be fair and impartial to both, and for the best interest of said Annie Booth's estate, then *said guardian is authorized to sell,* or to petition a court of *competent jurisdiction for authority and power to make such sale, as the statute in such cases provides,* * * *". Then immediately, Frank Booth, by his attorney, brought suit in a district court of Dallas County, in the name of E. W. Broadhurst, guardian of Annie Booth, as plaintiff, and against Frank

Booth, as defendant, for partition of the land belonging to the two; and on April 15, 1927 (only six days after the above probate order was entered), the district court entertained the petition, entered an order appointing one Bern Wilson guardian ad litem, to represent Annie Booth in lieu of the plaintiff E. W. Broadhurst, her guardian, and decreed that the 36 acres of land was incapable of a fair and equitable partition in kind between the aforesaid owners, and that the same should be sold and the proceeds equally divided between the plaintiff and defendant, through a receiver, at private sale, and, for that purpose, the court appointed one C. E. Perry special receiver. In accordance with said order, the receiver qualified by giving bond, and immediately thereafter made sale to Frank Booth of only the "undivided interest of Annie Booth," for $1,800, and reported that the sale was "made in accordance with and under and by virtue of the order and decree of said court."

On April 25, 1927, the district court approved the receiver's report of sale and directed the receiver to make deed to Frank Booth, the purchaser, and on April 29, 1927, the deed was executed; and after deducting $50 allowed by the court to Bern Wilson for having filed answer as guardian ad litem, $100 to the receiver C. E. Perry, and $500 to the attorney for Frank Booth, for purported services rendered to the receiver and the guardian, the residue, $1,150, was deposited in the registry of the district court and thereafter turned over to Broadhurst as guardian of the estate of Annie Booth.

In 1933, E. W. Broadhurst was, by the Probate Court of Dallas County, removed as guardian, and thereafter, one Lee Ellis was duly appointed; and he, as guardian, instituted suit in the district court against the former guardian, Broadhurst, and his bondsmen, to recover for his ward the money received in the partition sale; and in due time, by agreement, judgment was entered in favor of Ellis, as guardian, against Broadhurst, for the sum of $919, and against his bondsmen for the sum of $500. The $500 alone was subsequently paid. Thereafter, Ellis resigned as guardian and then Roy Simpson, a brother of Annie Booth, appellant herein, was appointed guardian, qualified, and is now acting as the guardian of the estate of his said sister.

It is admitted in the record that in 1931, Frank Booth sold the front 25 acres of the 36 acres of the land conveyed to him by the above procedure, to one F. F. Johnson, and that on April 25, 1939, Roy Simpson, as guardian, instituted a suit in the district court of Dallas County against Frank Booth and F. F. Johnson, to set aside the marriage annulment decree, and to recover the unsold portion of the 36 acres of land in possession of Frank Booth, on the ground of fraudulent procurement, and for damage. This cause was never tried on the merits: On October 6, 1939, the court, on its own motion, because of the failure of plaintiff to appear and prosecute the suit, entered an order dismissing the cause for want of prosecution. Then, in January, 1940, Roy Simpson, as guardian, instituted the present suit against Frank Booth and his present wife, Carrie L. Booth, eliminating Johnson as defendant, to recover the remaining portion of the 36 acres of land, approximately 12 acres, lying west of the 25 acres theretofore sold to Johnson, as being a part of the estate of Annie Booth, basing the claim on the alleged illegal procurement and fraudulent acts above related, for $5,000 for rents, revenues, and damage, and for "all general and special relief" in law and equity to which the ward may be entitled; and to set aside, annul and hold for naught all of the aforesaid probate and district court proceedings affecting the title to her estate, as against Frank Booth and his wife, Carrie L. Booth, and for such further relief as she may be entitled to. To this suit, the defendants answered by general demurrer, numerous special exceptions, pleas of estoppel based upon the guardian's acceptance of the residue consideration of said sale, and the judgment of dismissal of the prior suit involving the same subject matter. In limine, the trial judge overruled the demurrer, the exceptions and all pleas of estoppel; and the cause on the merits being submitted to the court without a jury, judgment was entered for the defendants.

Plaintiff's appeal presents numerous assignments; the defendants urged no counter assignment on the action of the trial court in overruling the demurrers, special pleas and exceptions.

█ The pertinent statutes of this state, under which liability is sought, guarantee the right of lunatics in the security of their estates, to be administered by a guardian imposed by well-defined duties by the county

judge. The official bond of such county judge is made answerable for the judge's dereliction in the performance of his duties, as well as that of the guardian, and he takes the oath of office and gives the official bond with full knowledge of the existence of the statutes and all statutory duties and responsibilities imposed upon him. Heyn v. Massachusetts Bonding & Ins. Co., Tex.Civ. App., 110 S.W.2d 261.

Article 5, Sec. 16, Texas Const., Vernon's Ann.St. vests in the county court the general jurisdiction of a probate court and provides that the county court shall " * * * appoint guardians of minors, idiots, lunatics, persons non compos mentis and common drunkards * * * transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis and common drunkards, including the settlement, partition and distribution of estates of deceased persons and to apprentice minors, *as provided by law.*" This constitutional grant of power vests in the county court general jurisdiction of probate matters appertaining to insane persons and empowers the Legislature to enact statutes imposing upon the judge of the county court the duties to exercise supervision over, examine into the condition of the estates of wards, and require ample security to protect such estates.

Under the purview of the Constitution, the Legislature of this state has exercised the function of enacting statutes in accordance with the grant of power:

Article 4102: "The County Court shall appoint guardians of minors, persons of unsound mind * * * settle accounts of guardians, and transact all business appertaining to the estates of minors, persons of unsound mind, * * *."

Article 4107: "Each decision, order, and judgment of the court in matters of guardianship, shall be rendered in open court at a regular term thereof except in cases where it is otherwise specially provided."

Article 4164: "The guardian of the estate is entitled to the possession and management of all property belonging to the ward, * * * to bring and defend suits by or against him; but in the management of the estate, the guardian shall be governed by the provisions of this title." (Title 69, Articles 4102–4329.)

Article 4165: "It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property. He shall account for all rents, profits and revenues as the estate would have produced by such prudent management."

Article 4195: " * * * when the property of the ward consists in whole or in part of an undivided interest in real estate and the guardian believes it to be to the best interest of the estate of the ward to sell such real estate, he may, *by written application to the court in which such guardianship is pending,* ask for an order for such real estate to be sold * * * "; and under this grant, Art. 4196, it is the duty of the guardian to apply under oath for such order where a necessity exists therefor, setting forth the necessity and the condition of the estate; and then, when the application is filed, Art. 4198, the clerk shall immediately call the attention of the judge of the court in which such guardianship is pending to the filing thereof, and the judge shall designate a day to hear such application; and, Art. 4200, when the real estate is ordered sold, *the judge shall make an order directing the sale and the terms of sale as may appear to the court* to be for the best interest of the estate; and, then, Article 4201, Sec. 4, provides: "That no sale made by the guardian pursuant thereto shall be confirmed, nor shall the title of the ward to such real estate pass to the purchaser, unless and until it shall first be found and determined by the Court, by an order duly made and entered to that effect, that the guardian's general bond is in an amount equal to double the value of the personal property then on hand, including the amount for which said real estate may be sold, plus such additional sum as may, in the opinion of the Court, be necessary to protect the estate of the ward, and that the sureties on such bond are solvent * * *." Section 5, same Article, requires the report of sale to be made to the court "in accordance with the law."

Article 4202: "All private sales of real estate shall be made in the county where the guardianship is pending; * * * "; and the report of sale, Art. 4215, shall be filed by the clerk, and the filing thereof noted in the case upon the judge's docket.

Article 4216: "At any time after the expiration of five days after the filing of a report of sale, the Court shall inquire into the manner in which such sale was made, and hear evidence in support of or against such report, and if satisfied that such sale was fairly made and in conformity with law and

that the guardian has on file a good and sufficient general bond in an amount equal to double the value of the personal property on hand, including the amount for which said real estate is being sold, plus such additional sum as may, in the opinion of the Court, be necessary to protect the estate of the ward; and if and when the guardian's general bond has been examined by the Court and found to be in the amount above required with good and sufficient sureties thereon, as evidenced by an order duly made and entered by the Court to that effect, the Court shall cause to be entered a decree confirming such sale, and order the report of sale to be recorded by the Clerk, and the proper conveyance of the property sold to be made *by the guardian to the purchaser,* upon compliance by such purchaser with the terms of sale. *The provisions of this Article shall be mandatory,* and unless the Court shall first determine that the guardian's bond is adequate and solvent as above set forth, as evidenced by an order made and entered by the Court to that effect, *any sale of real estate* hereafter made under the provisions of this Title *shall be void."* (Title 69.)

We have thus grouped the statutes prescribing the conditions and the preliminary steps to be taken in the sale of a ward's property by a guardian. It will be seen that the county court has exclusive jurisdiction of probate matters, the appointment of guardians, settle accounts and transact all business appertaining to the estates of wards; that it is the duty imposed upon the judge of the county court and not the district court to exercise supervision over the ward's interest, examine into the condition of the estates of wards and require ample security to protect such estates. The responsibility for the exercise of these duties rests upon the county judge alone, and for any dereliction in the discharge of these duties, his official bond is made to respond in damages. Such duties of the county judge in the administration of estates and sale of the ward's property are mandatory.

In order to render a sale by a guardian of a ward's real estate effectual to confer a valid right, the probate court must have acquired active jurisdiction by the presentment of a proper application by the guardian of the estate. The application becomes the commencement of the proceedings for the court to exercise jurisdiction. The purposes for the order of sale are prescribed by statute, and in the absence of express statutory provision, neither the guardian nor the probate court could sell or dispose of a ward's real estate in order to effect a partition with a stranger to the probate proceedings. Whatever the statute authorizes, the probate court may rightfully do. When the probate court, on a duly verified application, orders a sale of a ward's land under circumstances which do not exist, and for purposes not authorized by statute, its acts are nullities and the sale void. Neal et al. v. Holt et al., Tex.Civ. App., 69 S.W.2d 603.

The appointment and legal status of E. W. Broadhurst as guardian of the person and estate of Annie Booth is not challenged, and under the foregoing provisions of the statutes, he, through the probate court, had the exclusive management and control of the ward's estate, and was authorized to exercise the powers conferred by law, governed and controlled by the provisions of the statute relating to guardianships. The probate court, in this case, was administering through the guardian the estate of Annie Booth, and, for that purpose, had jurisdiction over her estate, but that court could not administer on the estate of Frank Booth because it had no jurisdiction over his estate. The statutes of this state confer no jurisdiction on the probate court to partition a ward's undivided interest with a stranger to the probate proceedings, owning a joint interest; and confer no authority on the guardian to direct the ward's interest sold on findings of necessity by outside agencies for the purpose of partition. Indeed, the district court alone had jurisdiction to partition the land between Frank Booth and Annie Booth, but to effect the partition, the district court had no jurisdiction to order a sale of the ward's real estate through a receiver, approve the sale and order such receiver to make deed to the purchaser. The district court shall not usurp the prerogative of the probate court in the administration of a ward's estate; or circumvent the statutory prerequisites for the sale of a ward's real estate through guardianship.

It will be seen (Art. 4195) that the guardian alone must determine the best interest of the estate of the ward, the necessity for the sale of an undivided interest in land belonging to the ward, and "by written application to the court in which such guardianship is pending, ask for an order for such real estate to be sold; * * *."

The probate and not the district court shall determine the necessity for the sale, direct the sale and the terms thereof; confirm the guardian's report of sale, and order the guardian to make deed to the purchaser in pursuance thereto; and that, too, only upon the guardian giving bond in an amount equal to double the value of the personal property then on hand and the amount for which said real estate may be sold. These provisions of the statute are by the Legislature expressly made mandatory, and unless followed, the sale of a ward's real estate is declared by the statute to be void. Art. 4216.

None of the provisions of the statute appertaining to the sale of Annie Booth's real estate were followed: The guardian made no application for the sale as required by law; merely petitioning the court for authority to institute suit in a proper court for partition of his ward's land, and in the event the land was found by other fact-finding agencies incapable of partition, "then same be sold and the proceeds thereof be protected *in accordance with the statute.*" On this petition, it will be seen that the probate court authorized the guardian to institute the suit for partition, but it expressly decreed that in the event the land could not be equitably partitioned then *the guardian* was authorized to sell or to petition a court of *competent jurisdiction* for authority and power to make such sale, *"as the statute in such cases provides."* Manifestly, the decree did not attempt to surrender the function of the court to make the order of sale, direct the terms and conditions of sale, confirm the sale, and relieve the guardian from making bond in sufficient amount to protect the interest of the ward, and to order *the guardian* to make deed on due compliance with the terms of sale.

Interpreting the decree of the probate court in the most favorable light, it merely authorizes suit to be filed in a court of competent jurisdiction to determine whether the ward's land was susceptible of partition, reserving the power of sale to the probate court *as the statutes in such cases provide.* Clearly, the order shows that the court did not attempt to confer authority upon the district court, if, in fact, such could be done, to make sale of Annie Booth's undivided interest in the 36 acres of land which was then being administered by the probate court. At most, the district court had jurisdiction to partition the land between the joint owners, but, in the event the land was not susceptible of partition and had to be sold to effect partition, the district court was only empowered by law to decree that fact and the probate court, in the exercise of its jurisdiction over probate matters, alone could effectually vest title in the purchaser of the ward's undivided interest. Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563, 196 S.W. 501; Murphey v. Murphey, Tex.Civ.App., 131 S.W.2d 158; Crowley v. Redmond, 123 Tex. 315, 41 S.W.2d 274; Redmond v. Crowley, 123 Tex. 315, 70 S.W. 2d 1113.

Annie Booth's undivided interest in the 36 acres of land having been ordered sold through a special receiver appointed by the district court, and the receiver having sold her interest and made deed to Frank Booth, the purchaser, without a purview of the statutes appertaining to the sale of a ward's real estate, such sale was void; the purchaser acquired no title and the owner, Annie Booth, is still the owner of her undivided interest in the land, free of any encumbrances or laches subsequently accruing; and the guardian of the ward may not ratify or confirm the void proceedings affecting the title, and the invalidity thereof may not be waived by any acts, omission or commission, of the guardian. Commander v. Bryan, Tex.Civ.App., 123 S.W.2d 1008; Neal v. Holt, Tex.Civ.App., 69 S.W.2d 603.

The record shows that appellees have had continuous possession of the 12 acres of land involved in this suit, claiming rights thereto adversely to appellant under the aforesaid invalid procedure of sale, since 1927; and that the reasonable annual rental value of the land during that time was $3.50 per acre. Calculating plaintiff's damages on that basis, judgment in the court below should have been rendered in her favor for one-half of that amount for fifteen years, a total of $315.

In view of the above conclusions, judgment is here rendered, reversing that of the court below, and entering judgment in favor of the plaintiff for the title and possession of the undivided one-half interest in the 12 acres involved and described in the suit, $315 damages, and all costs of suit.

Reversed and rendered.

### On Rehearing.

The record as heretofore revealed discloses that the Probate Court of Dallas County, Texas, had acquired jurisdiction over the entire estate of Annie Booth, an insane

person, including the land in controversy, prior to the assumption of jurisdiction by the district court. The order of the Probate Court, dated April 9, 1927, expressly directed a partition of the land owned jointly by Annie Booth and Frank Booth, and in the event it was found by a court of competent jurisdiction (a district court) that the land could not be equitably partitioned, so as to be fair and impartial to both and for the best interest of said Annie Booth's estate, then the "guardian is authorized to sell" or to petition a "court of competent jurisdiction for authority and power to make such sale as the statute in such cases provides." It will be seen from the order that the Probate Court never surrendered exclusive jurisdiction, if, in fact, it could do so, for the guardian of its appointment to seek authority and power from a district court to make such sale; and there is no statute that empowers a district court, on petition of a guardian, to direct the guardian to make sale of the ward's real estate. Such authority is vested exclusively in the probate court in which said guardianship is pending, and the guardian's acts in regard to the sale of the ward's real estate are expressly directed by statute.

Assuming without deciding that a district court may partition land in general, in which a minor or an insane person has an interest; and direct a sale of a ward's interest through a receiver, outside the purview of the statute relating to sales through the probate court, such power cannot extend to oust a probate court, exercising jurisdiction over an estate, of its function in directing the sale of real estate by a guardian and protecting a ward's interest by a bond.

The Legislature has seen fit to enact special statutes affecting the sale of real estate belonging to minors and insane persons through the probate court, which may not be surrendered to a court having general jurisdiction—special statutes having precedence over general statutes.

We think, in this case, the Probate Court had exclusive jurisdiction over the sale of the land belonging to Annie Booth, and the statutes on the subject not having been followed, the sale through the district court was void.

Appellant's motion for rehearing is overruled.