**BOUCHER et al. v. WALLIS et al.**

No. 2842.

Court of Civil Appeals of Texas. Eastland.

Jan. 26, 1951.

Rehearing Denied Feb. 16, 1951.

520.

Wynne & Wynne, Wills Point, Addison Bradford, Jr., Dallas, W. N. Stokes, Amarillo, for appellants.

Turner & Seaberry, Eastland, for appellees.

LONG, Justice.

This is a suit in the nature of a bill of review instituted by appellees to set aside an application to sell, order of sale, report of sale, order of confirmation and all other proceedings had in the probate court of Comanche County with reference to the sale of an undivided ⅞ths of a ½ interest in and to the minerals under approximately 249 acres of land in Comanche County and for an order commanding the County Court of Comanche County to enter a judgment nunc pro tunc, setting aside said proceedings. The trial court granted appellees the relief prayed for. Appellants have appealed.

In 1918, W. L. Wallis and wife were the owners of 249 acres of land in Comanche County. Mrs. Wallis died intestate leaving nine children of whom seven were minors. In September, 1918, W. L. Wallis was appointed temporary guardian of his seven minor children by the probate court of Comanche County. On February 10, 1919, the guardian filed an application to sell an undivided ⅞ths of ½ of ⅞ths of the minerals under this land. On February 26, 1919, the probate court entered an order authorizing the sale of said minerals. On March 6th the court entered an order confirming the sale of the mineral interest to R. E. Boucher for a net consideration of $19,439, and thereafter, on March 8th, the guardian executed a deed to Boucher conveying the said mineral interest. This suit is for the purpose of setting aside and holding for naught all of the various orders entered by the court with reference to such purported sale.

As grounds for the cancellation and setting aside of said orders, appellees alleged the following: (a) that the purported mineral deed from the guardian to Boucher was wholly without consideration and, therefore, void; (b) that the parties to the purported mineral deed meant and intended it to be an oil and gas lease only on the land; (c) that there was a conditional delivery only of the mineral deed to Boucher; (d) that Boucher abandoned and surrendered all rights under said deed; (e) that Boucher executed a valid release of any interest he might have secured under the mineral deed. Appellees alleged a number of defects in the guardianship proceedings upon which the mineral deed was based, claiming that such defects rendered them voidable.

The trial court filed extensive findings of fact sustaining appellees' contention and concluded that all of the proceedings relating to the purported sale of the minerals to Boucher should be struck from the record of the probate court. We have concluded that the evidence is sufficient to sustain the trial court's findings of fact. Especially is this true with reference to the findings that (1) the deed was without consideration; (2) that the parties intended the deed to be an oil and gas lease, and (3) that there was a conditional delivery of the mineral deed to Boucher. The mineral deed to Boucher recited a consideration of $19,439 "cash, in accordance with said order of court." Appellees testified that they were paid nothing for this deed. Even though many years had elapsed since this transaction, appellees were able to introduce in evidence the original bank records of Boucher, W. L. Wallis and the minor heirs. From these records and from other evidence, there is ample testimony to sustain the finding of the trial court that Boucher did not pay any consideration whatsoever for the mineral deed.

We believe the mineral deed from Wallis to Boucher, not being based upon any consideration, was and is void. Neal v. Holt, Tex.Civ.App., 69 S.W.2d 603 (Writ Ref.); Jones v. Sun Oil Co., 137 Tex. 353, 359, 153 S.W.2d 571; Simpson v. Booth, Tex.Civ.App., 163 S.W.2d 1080 (Err.Ref.).

In the mineral deed from Wallis to Boucher, we find the following provision: "It is agreed and understood that ⅛ of ⅞ of an undivided ½ of all the oil, gas and minerals underlying the above described tract of land is reserved as royalty to said

wards and that ⅞ of ½ of ⅛ of all the oil, gas and other minerals underlying and produced from said land, and shall be delivered to the said wards free of any cost."

The mineral deed from Wallis to Boucher was dated March 8, 1919. Thereafter, on July 1, 1919, Wallis, joined by his second wife, and his adult children and acting as guardian for his minor children, executed an oil and gas lease to Boucher covering the identical land out of which he had purported to convey to Boucher ⅞ of ½ of ⅞ of the minerals thereunder.

T. V. Wallis, who was more than 21 years of age at the time of the mineral deed from Wallis to Boucher, testified to a conversation he had with Boucher in March of 1919. This testimony is as follows: "The conversation was in regard to leasing, or a lease. Don't remember all that was said, except he did not know what would do unless would put the minor heirs' mineral right in their name until the lease was made, and after the lease was made would return the lease with all the proceeds of it."

Boucher was not present at the trial of this case but testified by deposition. We quote from his testimony as follows:

"Q. And you got the lease and you sold it to Pearl Janes Oil & Gas Company? A. Yes.

"Q. When you took that lease from him, that was to take the place of that deed given back in March, wasn't it? A. I guess so, I don't know.

"Q. All they paid for was $80,000.00 for that lease, wasn't it? A. Yes.

"Q. But this was the deed that was made to you and it says this amount is reserved as royalty to the children. The truth of it is it was reserved just like royalty in a lease, wasn't it? A. I don't know.

"Q. You were just to have the lease on those minors' interest until it could get through the court? A. I don't know."

█ Boucher assigned the oil and gas lease dated July 1, 1919 to Pearl Janes Oil & Gas Company on August 29, 1919.

Before Pearl Janes Oil & Gas Company would accept said lease and after the execution of the mineral deed to Boucher, a new guardianship proceeding was had. The guardian made a new application to lease and among other things, filed a new inventory and appraisement. The inventory and appraisement filed shows the mineral interest of the minors as unleased and unsold. This new inventory and appraisement was sworn to by the guardian before R. E. Boucher. Thereafter, Boucher executed a release to the mineral interest. This fact was reported to the probate court. He never at any time claimed to own the mineral interest until oil was discovered near the land in 1948. The facts and circumstances support the findings of the trial court that it was never intended between the parties for the mineral deed to take effect as a deed and that there was a conditional delivery thereof.

█ With reference to various defects in the guardianship proceedings upon which the mineral deed was based, the court made the following findings:

"Each of the defects and objections pointed out in the original opinion of the attorneys was valid. The required release mentioned in the supplemental opinion was executed by R. E. Boucher, but not filed for record."

"When the guardian's application to sell the mineral rights was filed on February 12, 1919, and on February 22nd a hearing was ordered for February 26th, the wards Byron V. Wallis, Henry Wallis, Forney Wallis and Ora Wallis were above the age of fourteen years and had not been served with citations or waived the issuance and service of citation; that the ward Byron V. Wallis never executed a waiver of service and was never served with citation in the guardianship proceeding.

"At the time when the guardian applied for said order of sale there had been filed in said guardianship proceedings no inventory as required by law. No report of the condition of the estates accompanied the application to sell; the report of the con-

dition of the estates was filed February 22nd only four days prior to the issuance of the order of sale on February 26th. The five days required statutory period was not observed.

"The order of sale authorizing the sale of said mineral rights did not name a place of sale, did not require bond to be executed by the guardian, did not state the necessity for the sale and whether it should be at private or public sale.

"The order of the court dated February 22nd setting the hearing for February 26th violated the statute providing that five full days should intervene.

"The order of confirmation dated March 6, 1919, was not based upon any legal or sufficient application to sell or order of sale.

"The purported corrected order of sale was dated April, 1919, long after the order of confirmation had been entered and after the purported guardian's deed had been executed and filed for record.

"No new or corrected order of confirmation was entered by the Court after a legal and valid application to sell had been filed and legal order of sale had been entered."

■ These findings have support in the evidence. The county court had no jurisdiction to set aside the mineral deed from the guardian to Boucher, but the probate court and the district court on appeal did have jurisdiction to entertain the bill of review seeking to set aside orders of the probate court with reference to the purported sale of the minerals to Boucher. Jones v. Sun Oil Company, 137 Tex. 353, 153 S.W.2d 571.

On August 12, 1919, W. L. Wallis, as guardian for his minor children, filed a written report in the probate court of Comanche County praying that certain orders and proceedings in connection with the purported sale of the minors be cancelled. The guardian reported to the probate court that Boucher had executed a release of all rights under the mineral deed, applied for an order of the court cancelling said mineral deed and all proceedings authorizing same. The trial court found that such an order was granted by the probate court of Comanche County but that no formal order could be found to this effect and no such order was recorded upon the minutes of the court.

The trial court directed the County Court to enter an order nunc pro tunc, as of date August 12, 1919, as prayed for in the application of the guardian, W. L. Wallis. We have concluded that the trial court erred in directing the entry of this judgment nunc pro tunc. The guardianship originated and terminated while Art. 3218, 3219 and 4051 of the Revised Statutes of Texas, 1914, Vernon's Ann.Civ. St.Arts. 3302, 4108, were in effect. Article 3218 is as follows: "All decisions, orders, decrees and judgments of the county court in probate matters shall be rendered in open court, and at a regular term of such court for civil and probate business, unless in cases where it is otherwise specially provided."

Art. 3219, Rev.Stat.1914: "All such decisions, orders, decrees and judgments shall be entered on the records of the court, during the term at which the same are rendered; and any such decision, order, decree or judgment shall be a nullity unless entered of record."

■ There is no showing in the record that such order was entered upon any of the records in the probate court of Comanche County. Art. 3218 as it existed in 1919 at the time such judgment was purportedly rendered by the probate court of Comanche County provided that all orders and judgments of the probate court shall be rendered in open court at a regular term of such court unless in cases where it is otherwise specially provided. Art. 3219, in effect at that time, provided that all judgments or decrees not so entered of record shall be a nullity. It is, therefore, apparent that the trial court had no authority to enter this order nunc pro tunc for the reason that the original order did not appear upon any of the records in the probate court of Comanche County. To enter such order nunc pro tunc would contravene the law as it existed at that time. Hannon v. Henson, Tex.Com.App.,

15 S.W.2d 579; Teague v. Swasey, 46 Tex.Civ.App. 151, 102 S.W. 458; Dowdle v. United States Fidelity & Guaranty Co., Tex.Civ.App., 242 S.W. 771.

■ Byron Wallis, one of the appellees, testified that shortly after the death of his father in 1923, he found an old U. S. Mail Box where his father kept his papers; that this box was in a tool house setting on a desk with a lock and key on it; that he went through the papers in said box in 1926; that among the papers he found a release from Boucher; that he made a copy of this release, first with a pencil and later on a typewriter. He further testified that he left the release in the box and that after this suit arose he could not find the original instrument. He also testified that there was a letter in the box from Boucher stating he had made three releases, one for the County Court, another for the Pearl Janes Oil & Gas Company and one for the father of the witness; that he had made search for this letter but was unable to find it. The court admitted, over objection of appellants, the copy of the original release from Boucher. Appellants assign as error the action of the court in admitting said copy of the original release and contend the court erred in admitting said instrument. It is the contention of appellees that said instrument was admissible as an ancient instrument. An instrument which is 30 years old proves itself and is admissible in evidence without proof of its execution where it is apparently free from suspicion and comes from the proper custody. 17 Tex.Jur., Sec. 300, page 702; McCormick and Ray, Texas Law of Evidence, Sections 612, 617, pages 771, 779.

■ Boucher did not deny the execution of said release. The guardian reported the execution of the release to the probate court of Comanche County. The attorneys for Pearl Janes Oil & Gas Company required such a release. Its being out of the power of the appellees to produce the original and the instrument being so old as to render direct evidence of its execution improbable, we are of the opinion that they could show its execution by circumstances. The objection made by appellant to the introduction of the copy of the release goes more to the weight of the evidence than to its admissibility. We believe the court did not err in admitting it in evidence.

■ The court admitted in evidence, over the objection of appellants, an opinion of an attorney who examined the title to the land in question for the Pearl Janes Oil & Gas Company in 1919. Appellants contend that the court erred in admitting said opinion. The evidence shows that the opinion came from Boucher and was delivered by Hon. Joseph Parker, an attorney of Gorman, to the attorney for appellees. We believe what we have said with reference to the admission in evidence of the copy of the release is equally applicable to the admission of this title opinion. We believe the court did not err in admitting it and appellants' point with reference thereto is overruled.

Appellants contend that appellees' cause of action is barred by limitation. This contention is well taken, unless the statute is tolled by reason of fraud. Appellees alleged a confidential relationship between them and Boucher, and many acts of fraud on his part tolling the four year statute of limitation. The court found as follows:

"20. R. E. Boucher had known W. L. Wallis and his family for many years; had taught school in the community where they lived and many of the Wallis children had attended school under Boucher as a teacher. Boucher had had considerable experience in the brokerage business. Wallis and his children were farmers with no practical business experience. A confidential relationship existed between Boucher and the Wallis family.

"21. Prior to the application to sell and the execution of the mineral deed on March 8, 1919, R. E. Boucher represented to W. L. Wallis and members of his family that:

"(a) The guardianship proceedings with reference to the mineral deed referred only to oil and gas lease on the land;

"(b) The mineral deed to be executed was in fact only an oil and gas lease;

"(c) The provision in the mineral deed itself that the interest reserved by the minors was a royalty made the mineral deed an oil and gas lease only;

"(d) All rights and interest under the mineral deed would terminate at the end of five years unless there was a producing well on the land;

"(e) Under the mineral deed and under the later leases executed by W. L. Wallis individually and his two adult children to Boucher, the same identical interest passed to Boucher;

"(f) The probate court of Comanche County had entered a formal order upon the minutes cancelling all proceedings in the guardianship with reference to a sale of the minerals;

"(g) That the oil lease from Wallis and family to Boucher dated July 1, 1919, superseded the mineral deed;

"(h) That Boucher's assignment of said lease to Pearl Janes Oil & Gas Company divested Boucher of any right, title or interest in and to the minerals.

"(i) That the mineral deed and the probate proceedings authorizing it were for temporary use only to be abandoned and released when a merchantable title to an oil and gas lease from the guardian could be furnished a lease.

"(j) That $42,000.00 was the entire sum received for said lease, when in fact Pearl Janes Oil & Gas Company paid $80,000.00 therefor.

"At said time and place the said R. E. Boucher also concealed from W. L. Wallis and his family and continued to conceal therefrom, until his deposition was taken, that a formal order cancelling the probate proceedings in said guardianship with reference to the sale of the minerals had not been entered upon the minutes of the Court and that a release of his rights to the minerals had not been recorded in the deed records of Comanche County.

"That each of the above representations and each of the above concealments was material, was false and known by Boucher to be false; was made and concealed for the purpose of lulling W. L. Wallis and his children into a sense of security and that the mineral deed would not have been executed and the probate proceedings in support thereof would not have been had but for such representations and concealments and as a result such representations and concealments amounts to and were fraudulent on the part of R. E. Boucher. That fraud was not discovered by plaintiffs until January, 1948 and could not have been discovered earlier by the use of reasonable diligence, which plaintiffs did not fail to exercise.

"22. * * * That the plaintiffs and neither of them discovered the fraud perpetrated upon them until the early part of January, 1948. The plaintiffs are not guilty of negligence in failing to make an investigation of the records or further investigation of the facts. The fraud perpetrated upon them was not discovered until 1948 and could not have been discovered by them by the use of reasonable diligence at an earlier date."

 The law is well settled that limitation runs from the time fraud was discovered or could have been discovered by the use of reasonable diligence. The record discloses that shortly after the death of W. L. Wallis in 1923, appellees moved to various places and states and returned to Comanche County only upon infrequent visits.

 The oil boom had died down and there was no oil activity in the community where this land was situated from that time until the latter part of 1947 when the Miears well was brought in in that vicinity. There is nothing in the record that would have put appellees on notice of any fraud perpetrated on them by Boucher. At the time of the execution of the mineral deed, appellees were minors. Byron Wallis, the oldest of the children, at the time the guardianship proceedings were instituted, was a soldier with the American Expeditionary Forces in France during World War I. The evidence is undisputed that at the time it is claimed he executed the

waiver of service he was on the front engaged in battle for his country. Boucher did not claim the mineral interest until after the discovery of oil in the Miear well. There is evidence that he stated he had no interest in the minerals and that if appellees would send him a quit claim deed he would sign it. They caused to be prepared and sent to him such a deed but he refused to execute it. Thereafter, he made a deed to Powers and Parker covering the minerals. It was shortly after this that appellees instituted this suit. As to whether they knew about this fraud or could have known about it by the exercise of ordinary diligence is a question of fact. This issue was decided by the trial court in favor of appellees.

Appellees were not under any legal duty to examine the deed records and probate records of Comanche County to ascertain if Boucher had defrauded them. They were not in possession of facts that would cause them to inspect the records. If they had examined the records, such examination would have revealed that the mineral deed had been abandoned; that the lease of July 1st took its place and that Boucher had released his interest thereunder. The recording of the mineral deed was not constructive notice to appellees of any fraud. The purpose of recording laws is to notify subsequent purchasers of the rights such instruments intended to convey and not to give protection to perpetrators of fraud. American Freehold Land Mortgage Co. v. Pace, 23 Tex.Civ. App. 222, 56 S.W. 377 (Writ Ref.); Stroud v. Pechacek, Tex.Civ.App., 120 S.W.2d 626, 631. We are of the opinion that appellees' cause of action is not barred by limitation and that the court did not err in so holding.

We sustain appellants' position with reference to that portion of the judgment which directs the probate court to enter a nunc pro tunc order as of August 12, 1919. The judgment is reformed so as to deny appellees this relief. The other points raised by appellants are overruled. We believe the trial court was correct in entertaining the bill of review and in striking from the records all of the pro-

ceedings relative to the purported sale of the minerals belonging to the minors to Boucher. This portion of the judgment is correct and should be in all things affirmed.

The judgment is reformed and affirmed.