ACCEPTED
03-14-00632-CV
4153377
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/13/2015 4:57:07 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00632-CV

IN THE COURT OF APPEALS FOR
THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/13/2015 4:57:07 PM
JEFFREY D. KYLE
Clerk

KARL B. BAILEY,
*Appellant*,

v.

MIDFIRST BANK,
*Appellee*.

ON APPEAL FROM THE 250TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-14-002430
HON. GUS J. STRAUSS, PRESIDING

**BRIEF FOR THE APPELLEE**

Mark D. Hopkins
Texas State Bar No. 00793975
Hopkins & Williams, PLLC
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com

ATTORNEY FOR APPELLEE

February13, 2015

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1), Appellee certifies that the following is a complete list of all parties and counsel:

1.  **Appellee:**                    **MidFirst Bank, N.A.**

    Represented at trial         Chris H. Pochyla
                                 Texas State Bar No. 24032842
                                 Barrett Daffin Frappier Turner & Engel, LLP
                                 15000 Surveyor, Blvd., Suite 100
                                 Addison, Texas 75001
                                 (972) 340-7955 – Telephone
                                 (972) 341-0734 - Facsimile

    Represented on appeal by:    Mark D. Hopkins
                                 Texas State Bar No. 00793975
                                 Hopkins & Williams, PLLC
                                 12117 Bee Caves Rd., Suite 260
                                 Austin, Texas 78738
                                 (512) 600-4320 – Telephone
                                 (512) 600-4326 – Facsimile

2.  **Appellant:**                   **Karl B. Bailey**

    Represented at trial
    and on appeal by:            William B. Gammon
                                 Texas State Bar No. 07611280
                                 Anthony G. Read
                                 Texas State Bar No. 24056184
                                 Gammon Law Office, PLLC
                                 1201 Spyglass Drive, Suite 100
                                 Austin Texas 78746
                                 (512) 444-4529 – Telephone
                                 (512) 545-4279 - Facsimile

3.  **Trial Judge:**                 **Hon. Gus J. Strauss**
                                 250th Judicial District Court of Travis
                                 County, Texas

# TABLE OF CONTENTS

BRIEF FOR THE APPELLEE ................................................................................. i

IDENTITY OF PARTIES AND COUNSEL ........................................................... ii

TABLE OF CONTENTS ...................................................................................... iii

INDEX OF AUTHORITIES ................................................................................. iv

STATEMENT OF THE CASE ............................................................................... 1

ISSUES PRESENTED .......................................................................................... 2

STATEMENT OF FACTS ..................................................................................... 3

SUMMARY OF THE ARGUMENT ..................................................................... 5

ARGUMENTS & AUTHORITIES ....................................................................... 7

    1. Did the trial court commit error in granting Appellee's request for declaratory relief regarding the validity of the foreclosure sale of the Property? ..................................................................................................... 8

    2. Did the trial court error in determining that Appellant's breach of contract claim fails as a matter of law? ......................................................... 15

    3. Did the undisputed summary judgment evidence negate Appellant's wrongful foreclosure claim as a matter of law? ......................... 16

    4. Does the undipsuted summary judgment evidence negate Appellant's quiet title claim as a matter of law? ............................................. 18

    5. Did the trial court error in determining that Appellant's affirmative claim for equitable estoppel fails as a matter of law given that it is only a defensive claim and not an affirmative cause of action? .................... 20

PRAYER ............................................................................................................. 22

CERTIFICATE OF SERVICE ............................................................................ 23

CERTIFICATE OF COMPLIANCE ................................................................... 24

APPENDIX ......................................................................................................... 25

# INDEX OF AUTHORITIES

**CASES**                                                               **PAGE(S)**

*Athey v. MERS,*
    314 S.W.3d 161 (Tex. App.—Eastland 2010, pet. denied). ................................ 9

*BHP Petroleum Co. v. Millard,*
    800 S.W.2d (Tex. 1990) ................................................................................. 14

*Bierwirth v. BAC Home Loan Servicing, L.P.,*
    2012 WL 3793190 (Tex. App. – Austin 2012) ....................................... 3, 10, 11

*Biswell v. Gladney,*
    213 S.W. 256 (Tex.Comm'n App.1919) .......................................................... 21

*Boucher v. Wallis,*
    236 S.W.2d 519 Tex.Civ.App.—Eastland 1951, writ ref'd n.r.e.) ..................... 21

*Campbell v. Mort. Elect. Reg. Systems, Inc.,*
    2012 WL 1839357 (Tex. App. – Austin, pet. denied) .......................................... 9

*Charter Nat'l Bank – Houston v. Stevens,*
    781 S.W.2d 368 (Tex. App. – Houston [14th Dist.] 1989, writ denied) .............. 17

*Cox v. Clay,*
    237 S.W.2d 798 (Tex. App. -Amarillo 1951) .................................................... 21

*Cuauhtli v. Chase Home Fin. LLC,*
    252 F. App'x 690 (5th Cir.2007) ..................................................................... 12

*EMC Mortgage Corp. v. Window Box Ass'n, Inc.,*
    264 S.W.3d 331 (Tex.App. 2008). .................................................................. 16

*Fillion v. David Silvers Co.,*
    709 S.W.2d 240 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e) ........ 18

*Ford Motor Co. V. Ridgway,*
    135 S.W. 3d 598, 600 (Tex. 2004) .................................................................... 8

*Fricks v. Hancock,*
  45 S.W. 3d 322 (Tex. App. – Corpus Christ 2001, no pet.). ............................... 19

*Harris v. Ebby Halliday Real Estate, Inc.*
  345 S.W. 3d 756 (Tex.App.---El Paso 2011, no pet.) ............................................. 8

*Howell v. Mauzy,*
  899 S.W.2d 690 (Tex. App. – Austin 1994, writ denied) .................................. 13

*Johnson v. Hewitt,*
  539 S.W.2d 239 (Tex. Civ. App. – Houston [1st Dist.] 1976, no writ) .............. 13

*Kelly v. Rio Grande Computerland Group,*
  128 S.W.3d 759 (Tex. App. – El Paso 2004, no pet.) ......................................... 21

*Kramer v. Fannie Mae,*
  2012 WL 3027990 (W.D.Tex. May 15, 2012) ..................................................... 10

*Lambert v. First Nat. Bank of Bowie,*
  993 S.W.2d 833 (Tex. App. – Ft. Worth 1999, no pet.) ...................................... 18

*Pena Wells Fargo Bank, N.A.,*
  2014 WL 2090859 (W.D. Tex. 2014) ................................................................. 16

*Reinagel v. Deutsche Bank Nat. Trust Co.,*
  735 F.3d 220 (5th Cir. 2013) ............................................................................. 11

*Rodriguez v. Ocwen Loans Servicing, LLC,*
  306 F. App'x 854 (5th Cir.2009) ........................................................................ 12

*Sefzik v. City of McKinney,*
  198 S.W.3d 884 (Tex. App. – Dallas 2006, no pet) ........................................... 21

*Stanley v. CitiFinancial Mortg. Co.,*
  121 S.W.3d 811 (Tex.App.- Beaumont 2003, pet. denied) ................................. 12

*Star-Telegram, Inc. v. Doe,*
  915 S.W.2d 471, 473 (Tex. 1995). ....................................................................... 8

v

*Stephens v. LPP Mortg.,*
  316 S.W.3d 742 (Tex.App.-Austin 2010, pet. denied) ........................................ 10

*Valence Operating Co. v. Dorsett,*
  164 S. W. 3d 656 (Tex. 2005) ........................................................................ 7

*Vernon v. Perrien,*
  390 S.W.3d 47 (Tex. App. – El Paso 2012, pet. denied) .................................. 19

*Wright v. Matthews,*
  26 S.W. 3d 575 (Tex. App. – Beamount 2000, pet. denied) .............................. 19

*Ysasaga v. Nationwide Mut. Ins.,*
  279 S.W.3d 858 (Tex. App. – Dallas 2009, pet. denied) .................................. 13

**STATUTES**                                                              **PAGE(S)**

C.P.R.C. §37.004 .......................................................................................... 14

Tex. Prop. Code Chapter 51 ...................................................................... 5, 14

Tex. Prop. Code §51.002 ........................................................................ 10, 12

Tex. Prop. Code Ann. §§ 51.0001(4) ............................................................. 10

Tex. R. Civ. P. 310 ............................................................................ 1, 6, 14, 15

# I.
## STATEMENT OF THE CASE

Appellant Karl B. Bailey ("Appellant" or "Bailey") appeals summary judgment in favor of MidFirst Bank ("Appellee" or "MidFirst"), entered by the 250th Judicial District Court in Travis County, Texas, on July 2, 2014. (CR at 26-27). The trial court dismissed all of Appellant's claims against MidFirst, and granted MidFirst's counterclaim for a declaration that MidFirst's non-judicial foreclosure sale[1] of 1234 Acanthus Street, Pflugerville, Texas 78660 (the "Property") was proper. The trial court also granted MidFirst relief pursuant to Texas Rule of Civil Procedure 310, whereby providing MidFirst possession of the Property. Appellant severed his claims against MidFirst from the remaining defendants in the lawsuit on July 22, 2014 so that the summary judgment in favor of MidFirst could become final (CR 28). Appellant then filed a Motion for New Trial on July 28, 2014 (CR 29-31). Appellant's Motion for New Trial was overruled by operation of law and he subsequently filed a Notice of Appeal on September 30, 2014 (CR 57-58).

---

[1] The Property was sold at a non-judicial foreclosure sale on January 4, 2011 due to the mortgagor's failure to pay his mortgage. (Supp. CR 75)

## II.
## <u>ISSUES PRESENTED</u>

1. **Did the trial court commit error in granting Appellee's request for declaratory relief regarding the validity of the foreclosure sale of the Property?**

2. **Did the undisputed summary judgment evidence negate Appellant's breach of contract claim as a matter of law?**

3. **Did the undisputed summary judgment evidence negate Appellant's wrongful foreclosure claim as a matter of law?**

4. **Did the undisputed summary judgment evidence negate Appellant's quiet title claim as a matter of law as the deed records establish MidFirst's superior legal title to the property?**

5. **Did the trial court error in determining that Appellant's affirmative claim for equitable estoppel fails as a matter of law given that equitable estoppel is only a defensive claim and not an affirmative cause of action?**

2

# III.
# STATEMENT OF FACTS

This is a home foreclosure matter and involves real estate located in Travis County, Texas. On July 15, 2004, Travis Chestnut and Amy Chestnut borrowed $116,578.00 to purchase the real property and improvements at 1234 Acanthus Street, Pflugerville, Texas 78660 (hereafter, "Property"). The Chestnuts agreed to repay their loan by executing a promissory note ("Note") (Supp. CR 51-53), and they secured the Note by executing a deed of trust ("Deed of Trust") (Supp. CR 39-50).

The Deed of Trust identified Mortgage Electronic Registration Systems (MERS) as "Beneficiary" and stated that MERS was the nominee for Lender (Alethes, LLC) and its successors and assigns. (Supp. CR 49). The Deed of Trust further specified that MERS had the right to exercise any or all of the interests that the Chestnuts granted in the Deed of Trust, including the right to foreclose and sell the Property and to take any of the Lender's required actions (Supp. CR 50).

MERS ("as nominee for Lender and Lender's successors and assigns") subsequently assigned the Chestnuts' Note and Deed of Trust to MidFirst and recorded the assignment in the Travis County real property records. (Supp. CR 51).[2] *See Bierwirth v. BAC Home Loans Servicing, L.P.*, 2012 Tex. App. LEXIS

---

[2] The Note was also subsequently endorsed to MidFirst. (Supp. CR 51).

7506, at *2-3 (Tex. App. – Austin 2012, no pet.)(mem. op.)(addressing analogous facts).

Unbeknownst to MidFirst and without MidFirst's approval, the Chestnuts sold the Property to Appellant Bailey in 2009, without the Chestnuts paying off their Note nor obtaining a release of MidFirst's Deed of Trust. The Chestnuts and Appellant supposedly entered into a "Wally Wrap"[3] through which Appellant was to pay his monthly installment (under the Wally Wrap) to the Chestnut's designee, and the Chestnuts' designee would, in turn, continue to pay the MidFirst Note. The special warranty deed from the Chestnuts[4] into Appellant specifies that the conveyance of title to the Property into Appellant is subordinate to MidFirst's interest(s) in the Property.[5]

As any bad television movie would go, the Chestnuts (through their designee) ceased making payments on the MidFirst Note while still collecting Appellant's monthly installment payments. After the Chestnuts defaulted on their Note, MidFirst initiated the foreclosure process that culminated in the foreclosure

---

[3] *See, Appellant's Brief* at. n.1 describing Wally Wraps in general.

[4] The Chestnuts actually transferred title to the property to their designee who then, in turn, conveyed the property to Appellant.

[5] The Special Warranty Deed reads in part,
> This conveyance, however, is made and accepted subject to the Vender's Lien retained in Deed recorded as Document No. 2004136581 in the Official Public Records of Travis County, Texas the Deed of Trust recorded as Document No. 2004136582 in the Official Public Records of Travis County, Texas, and assigned by instrument recorded as Document No. 2009079539…(Supp. CR 39).

sale of the Property on January 4, 2011. (Supp. CR 135). During the foreclosure process, MidFirst sent the Chestnuts a notice of default (Supp. CR 61), a notice of acceleration (Supp. CR 70), and a notice of foreclosure sale (Supp. CR 72).

The foreclosure sale occurred as scheduled on January 4, 2011. Appellant asserts that the foreclosure sale is invalid because MidFirst did not send Appellant notice of the foreclosure sale. *See, Appellant's Brief* at 21. Appellant also seeks to challenge the assignment into MidFirst from MERS, whereby indirectly attacking the validity of the foreclosure sale. *See, Appellant's Brief* at 20.

## IV.
## SUMMARY OF THE ARGUMENT

1.   Foreclosure was in compliance with contractual terms. MidFirst's foreclosure of the Property, after the default by the Chestnuts, occurred in strict compliance with the terms of the Deed of Trust and Chapter 51 of the Texas Property Code. Notices of foreclosure are to be sent to "debtors" obligated on the Note. Appellant was not an obligor on the Note and therefore was not entitled to notice.

2.   Appellant lacks standing to challenge the Deed of Trust. Appellant seeks to attack the assignment of the Deed of Trust from MERS into MidFirst. As provided by black letter law, a nonparty to an assignment does not have standing to challenge an assignment on grounds that would only render the assignment voidable and not void. Additionally, even if the assignment were to have failed

5

(which it did not) the summary judgment evidence also provided that MidFirst holds the Note. Either as the note holder or beneficiary under the Deed of Trust, MidFirst qualified as a *mortgagee* as that term is defined by the Texas Property Code. As a mortgagee of the Property, MidFirst was authorized to conduct the foreclosure sale of the Property.

3. <u>Effect of MidFirst's superior title in the Property.</u> MidFirst purchased the Property at the foreclosure sale. The special warranty deed through which Appellant claims his interest in the Property specifically recognizes that the title interest conveyed to Appellant (by the Chestnuts) was subordinate to MidFirst's vendor's lien and Deed of Trust lien. When the Deed of Trust lien was foreclosed, Appellant lost his title interest in the Property. As such, Appellant's quiet title claim against MidFirst fails as a matter of law.

4. <u>Declaratory Relief and Right to Possession.</u> The trial court properly granted the affirmative relief of MidFirst in validating the foreclosure sale. As no contract existed between Appellant and MidFirst, MidFirst properly obtained the trial court's judgment with respect to the contested right to the Property as between the parties. Further, the trial court was empowered to provide Tex. R. Civ. P. 310 relief to MidFirst in awarding MidFirst possession of the Property given its superior interest in the Property vis-à-vis Appellant.

# V.
## ARGUMENTS & AUTHORITIES

As a common problem running through Appellant's Brief, Appellant attempts to articulate that his various causes of action were denied for very specific reasons. Appellant then attempts to set up straw man arguments attacking the *imagined* reasons for the trial court's ruling (eg. "Summary Judgment is in Error because Bailey has standing to bring his claims…" see, *Appellant's Brief* at 18). However, the trial court did not specify the reasons why it granted MidFirst's summary judgment motion. Appellant's limited arguments in attacking the summary judgment order misses the mark in the sense that Appellant needs to attack all grounds upon which the judgment could have been rendered, and not just selected issues.

MidFirst filed both a traditional and no-evidence motion for summary judgment. In granting MidFirst's Motion for Summary Judgment, the court did not address in its order the grounds upon which the motion was granted, nor whether it was granting MidFirst's traditional motion or no-evidence motion with respect to each cause of action. (CR 27).

Both traditional and no-evidence summary judgment motions are subject to a de novo review upon appeal. *See Valence Operating Co. v. Dorsett*, 164 S. W. 3d 656, 661 (Tex. 2005). When a party moves for summary judgment under both standards, the reviewing court will generally address the no-evidence grounds first.

*Ford Motor Co. V. Ridgway*, 135 S.W. 3d 598, 600 (Tex. 2004). When, as in this case, the trial court does not specify the basis for the judgment, the appealing party must demonstrate none of the grounds proposed in either motion support the judgment. *Harris v. Ebby Halliday Real Estate, Inc.* 345 S.W. 3d 756, 759 (Tex.App.---El Paso 2011, no pet.) *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). The appellate court may review and affirm on any ground the movant presented in a motion for summary judgment, regardless of whether the trial court identified the ground relied on to grant the summary judgment. *Cincinnati Life Ins. v. Cates,* 927 S.W.2d 623, 625 (Tex. 1996).

1. **Did the trial court commit error in granting Appellee's request for declaratory relief regarding the validity of the foreclosure sale of the Property?**

The trial court did not commit error in granting MidFirst declaratory relief that its foreclosure sale was valid, and that the foreclosure of MidFirst's purchase money lien interest in the Property extinguished all subordinate liens. Appellant attacks the grant of declaratory relief on three grounds, those being:

a.      The Assignment into MidFirst is invalid and therefore MidFirst had no authority to conduct the sale;

b.      MidFirst did not comply with the necessary pre-sale requirements set out within the Deed of Trust and Texas Property Code; and

c.      The trial court should not have even considered MidFirst's request for declaratory relief as the relief was duplicative of the claims already asserted by Appellant before the trial court.

8

**a.  MidFirst's legal standing to foreclose is beyond dispute.**  MidFirst's legal

right to have conducted the foreclosure sale of the Property is crystal clear.  The

recorded assignment of the Deed of Trust into MidFirst, from MERS, leaves no

room for doubt that MidFirst was empowered to act pursuant to the terms of the

Deed of Trust (including the power to foreclose). This Court has repeatedly held in

recent years that,

> Under Texas law, where, as here, a deed of trust expressly grants
> MERS the power of sale, then MERS has that power. *Athey v. MERS*,
> 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied). MERS
> was the nominee for [lender] and its successors and assigns… MERS
> had the authority to transfer the rights and interests in the deed of
> trust… When MERS transferred the deed of trust to [assignee],
> [assignee] obtained all MERS's rights and interests in the deed of
> trust, including the power to foreclose on the property. As in Athey,
> the mortgage documents provide for the use of MERS, and those
> provisions are enforceable to the extent provided by the terms of the
> documents.

*Campbell v. Mort. Elect. Reg. Systems, Inc.*, 2012 WL 1839357 (Tex. App. –

Austin, pet. denied).  Appellant attempts to misdirect the Court away from the

express powers granted MidFirst under the Deed of Trust by pointing to a

supposed discrepancy with the endorsements on the Note.[6]  Appellant argues that if

the endorsements on the Note are unclear 'there must be doubt about who can

---

[6] The Note was originally endorsed from Atheles LLC into GMAC, and then from GMAC into
MidFirst.

9

foreclose as the beneficiary under the Deed of Trust.' See generally, *Appellant's Brief* at 24.

Appellant's argument misses the mark in the sense that the right to foreclose under a security instrument is fundamentally different than a note holder's right to seek collection on a note. It does not matter if MidFirst held the Note or not at the time of foreclosure. As the Austin Court of Appeals set out in *Bierwirth v. BAC Home Loan Servicing, L.P.,* "Bierwirth's assertion that an entity must own or hold a promissory note to conduct a foreclosure under the associated deed of trust runs afoul of the property code provisions governing foreclosure under a deed of trust." *Bierwirth v. BAC Home Loan Servicing, L.P.*, 2012 WL 3793190 (Tex. App. – Austin 2012); *See also,* Tex. Prop. Code Ann. §§ 51.0001(4)(defining "mortgagee"), and 51.002 (providing procedure for foreclosure "under power of sale conferred by deed of trust") (West Supp.2012); *Kramer,* 2012 U.S. Dist. LEXIS 105878, at *17–18, 2012 WL 3027990. Continuing, the Austin Court of Appeals went on to state,

> Similarly, this Court rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations—the note against the borrower and the lien against the real property. *See Stephens v. LPP Mortg.,* 316 S.W.3d 742, 747 (Tex.App.-Austin 2010, pet. denied). For this reason, a lien creditor may pursue foreclosure of a lien against real property under the deed of trust independent of any personal action against the borrower for collection on the note. *See id.; see also Kramer v. Fannie Mae,* No. A–12–CA–276–SS, 2012 U.S. Dist. LEXIS 105878, at *16–19, 2012 WL 3027990 (W.D.Tex. May 15,

10

2012).

*Bierwirth v. BAC Home Loan Servicing, L.P.*, 2012 WL 3793190 at \*4 (Tex. App. – Austin 2012). Simply put, Texas courts refuse to conflate foreclosure under a security instrument with enforcement of a note.

Appellant also attempts to argue that the trial court improperly determined that Appellant lacked standing to challenge the Assignment to the Deed of Trust; the trial court never made such a ruling (instead the summary judgment order simply reads that Appellant's claims are denied). The summary judgment record factually supports that MidFirst is the holder of the Note (by way of endorsement)(Supp. CR 51), and is also the beneficiary of the Deed of Trust (by way of assignment)(Supp. CR 39). Whether the Assignment from MERS attempted to transfer the Note to MidFirst (by assignment) despite MidFirst already being the holder of the Note (by endorsement) is immaterial. At a minimum the summary judgment evidence depicts that MidFirst was assigned the Note twice, and was assigned the Deed of Trust once.[7] The assignment of the Deed of Trust alone was sufficient to empower MidFirst to act as it did.

**b.   MidFirst Complied with all Pre-sale requirements.**   MidFirst's

---

[7] Even if the trial court based its decision on issues of standing as opposed to the factual issue of MidFirst holding the Note and being the beneficiary under the Deed of Trust, Appellant can't escape that he does not possess standing to challenge the assignment in the manner addressed in his brief. *See, Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220 (borrower did not have standing to challenge assignment on grounds that would only make the assignment "voidable" as opposed to being "void." Nothing Appellant has articulated suggests that the Assignment of the Deed of Trust was void from inception.

11

declaratory relief, affirming the foreclosure sale, is supported by the undisputed summary judgment evidence. Specifically, the Chestnut's Note was in default. MidFirst sent the Chestnuts a notice of default as required by the Deed of Trust (Supp. CR 61). After the default was not cured, MidFirst sent the Chestnut's a notice of acceleration of the debt. (Supp. CR 72). Notice of foreclosure was also provided to the Chestnuts as required by law (Supp. CR 74). Contrary to Appellants un-cited legal proposition that Appellant was also entitled to notice of sale, Texas law is clear that the entity conducting foreclosure must provide notice only to the obligors under the loan agreement. See, Tex. Prop. Code §51.002 ("serving written notice of the sale by certified mail on each **debtor** who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.")(emp. added). "There is no legal requirement that personal notice of foreclosure be sent to persons not parties to the deed of trust." *Rodriguez v. Ocwen Loans Servicing, LLC,* 306 F. App'x 854, 856 (5th Cir.2009) (quoting *Stanley v. CitiFinancial Mortg. Co.,* 121 S.W.3d 811, 817 (Tex.App.- Beaumont 2003, pet. denied)); *Cuauhtli v. Chase Home Fin. LLC,* 252 F. App'x 690, 692 (5th Cir.2007) ("The personal notice that must be given to debtors is not owed to residents of the property who are not personally liable for the debt.").

The undisputed summary judgment evidence established that the Chestnuts were in default on their Note. The evidence also established that the required

notices of default, acceleration and sale were sent to the Chestnuts. The substitute trustee's deed additionally reflects that the sale occurred within the time required and at the location specified.

**c.** **MidFirst's Counterclaim for Declaratory Relief was Proper.** Appellant seeks to challenge the propriety of the trial court even entertaining MidFirst's request for declaratory relief. Appellant asserts that his filing of a quiet title cause of action works to bar MidFirst from bringing a claim for declaratory relief. See, *Appellant's Brief* at 30 (relying on the proposition that, "The Declaratory Judgments Act is not available to settle disputes already pending before the court. *Johnson v. Hewitt*, 539 S.W.2d 239, 240-241 (Tex. Civ. App. – Houston [1st Dist.] 1976, no writ))." Appellant is incorrect in his analysis of the law.

A court may allow a declaratory judgment counterclaim if it is something more than a mere denial of the plaintiff's claim and has greater ramifications than the original suit. See, *Howell v. Mauzy,* 899 S.W.2d 690 (Tex. App. – Austin 1994, writ denied); *Ysasaga v. Nationwide Mut. Ins.,* 279 S.W.3d 858, 863 (Tex. App. – Dallas 2009, pet. denied). A counterclaim states a claim for affirmative relief if it alleges that the defendant has a cause of action independent of the plaintiff's claim, on which the defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon or fail to establish his cause of action.

13

*BHP Petroleum Co. v. Millard,* 800 S.W.2d 838 (Tex. 1990).

MidFirst's request for declaratory relief has larger implications than simply determining the rights of Appellant vis-à-vis MidFirst. MidFirst's relief was not only whether the sale was valid, but also whether the sale extinguished all inferior lien interests (not just Appellant's interest). As such, MidFirst's claim was independent of Appellant's action and sought relief beyond Appellant's limited interest in the Property.

MidFirst properly brought a claim for declaratory relief pursuant to Civil Practice and Remedies Code §37.004 seeking to ascertain the status of its rights in the Property. The summary judgment evidence undisputedly establishes that MidFirst possessed the right to foreclose as the beneficiary under the Deed of Trust, and that the foreclosure sale was performed in accordance with the terms of the Deed of Trust and Chapter 51 of the Texas Property Code. The trial court's grant of declaratory relief to MidFirst should be in all things affirmed.[8]

---

[8] By way of ancillary relief the trial court granted MiFirst a writ of possession. The trial court's declaratory relief specifically provided that, "any interests of any secondary or junior lienholder were extinguished as a result of the foreclosure sale." MidFirst asked for Rule 310 relief within the body of its motion for summary judgment and in its prayer for relief generally asked for a writ of possession ancillary to its request for declaratory relief. In response, the trial court ruled, "MidFirst, is entitled to possession of the premises in accordance with Tex. R. Civ. P. 310 **and** that Defendant Midfirst have restitution, for which let writ issue…" (CR 24-25)(emp. added). Even if the trial court assigned an incorrect reason for the issuance of the writ (which it did not), "we will affirm if we find that one of the grounds asserted by the movant is valid." *Torres v. Chrysler Credit Corp.,* 655 S.W.2d 249 (Tex. App. – Corpus Christi 1983); *Hotchkiss v. Texas Employers' Insurance Ass'n*, 479 S.W.2d 336, 339 (Tex. Civ. App. – Amarillo 1972, no writ). MidFirst's right to possession of the Property flows from its superior legal interest in the

14

**2. Did the trial court error in determining that Appellant's breach of contract claim fails as a matter of law?**

Appellant brought a claim against MidFirst for breach of contract (breach of the terms of the Deed of Trust). Appellant asserts MidFirst should have provided Appellant with notice of the foreclosure sale of the Property. In defense, MidFirst moved for summary judgment seeking to negate Appellant's breach of contract claim on the grounds that: (1) Appellant does not have standing to assert his claim as he was not a party to the Deed of Trust, and (2) that Appellant was not entitled to notice.[9]

In a strikingly similar case to this matter, the United States District Court for the Western District of Texas was confronted in *Pena v. Wells Fargo Bank, N.A.* with whether a person holding an equitable interest in property (under a wrap around deed of trust), but who was not a party to the Deed of Trust, possessed standing to sue for breach of contract for lack of notice of sale. The court concluded,

> "[A] s a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." … However, Texas courts recognize a third-party exception to this rule: "when [a] third party has a property interest, whether legal or equitable, that will be affected by [a foreclosure] sale, the third party

Property. Whether via Rule 310 relief or as ancillary relief to MidFirst's declaratory relief, it was proper for the trial court to see to the enforcement of its order.

[9] In Section 1b above, MidFirst addressed the issue that notice of sale is to be sent to **debtors** obligated for repayment of the Note, which did not include Appellant.

has standing to challenge such a sale to the extent that its rights will be affected by the sale." *EMC Mortgage Corp. v. Window Box Ass'n, Inc.*, 264 S.W.3d 331, 335 (Tex.App.2008).

*Pena v. Wells Fargo, N.A.*, 2014 WL 2090859 (W.D. Tex. 2014).

However, despite having standing to sue, the *Pena* court held that the plaintiff's claim failed as a matter of law because,

> "Plaintiff's Complaint does not allege that she is a party to the deed of trust or otherwise a debtor on the loan taken out by the Apostols to secure the Property. *See* Pl.'s Compl. Moreover, Plaintiff does not cite to any statute or regulation that would require Defendants to provide foreclosure notices to Plaintiff. Therefore, dismissal is appropriate as to Plaintiff's claims that Defendants failed to provide her with foreclosure notices pursuant to the Deed of Trust and the Texas Property Code.

*Pena Wells Fargo Bank, N.A.,* 2014 WL 2090859 *3. Appellant sets out in his brief that the trial court determined that he did not have standing to assert his breach of contract claim; the trial court made no such determination. Rather, the trial court granted MidFirst's summary judgment without specifying the reasons. The record clearly reflects that while Appellant had standing to pursue his claim, his claim failed as a matter of law because Texas law does not require notice of sale be provided to individuals who are not parties to the deed of trust nor debtors obligated on the note. This Court should in all things affirm the trial court's dismissal of Appellant's breach of contract claim.

3. **Did the undisputed summary judgment evidence negate Appellant's wrongful foreclosure claim as a matter of law?**

16

In trying to appreciate what cause of action Appellant is attempting to assert via his "void foreclosure" allegation (*See Appellant's Brief* at 24), MidFirst assumes Appellant is attempting to articulate a cause of action for wrongful foreclosure. In defense against Appellant's claim, MidFirst filed a no-evidence motion for summary judgment. Appellant failed to produce any evidence in support of the various elements of his wrongful foreclosure claim.

The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a casual connection between the defect and the grossly inadequate selling price. *Charter Nat'l Bank – Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. – Houston [14th Dist.] 1989, writ denied). The only aspects of the foreclosure that Appellant challenges are that MidFirst did not have standing to conduct the sale, and that Appellant was entitled to notice of sale. MidFirst has already addressed each of these issues at length above.

Appellant failed to produce any evidence in response to MidFirst's no evidence motion depicting a defect with the foreclosure process. Additionally, nowhere within Appellant's summary judgment response, nor his Appellant's Brief, is there any discussion or commentary regarding a grossly inadequate selling price for the Property at the foreclosure sale. As Appellant failed to produce more

than a scintilla of evidence regarding essential elements of his cause of action for wrongful foreclosure, his claim fails as a matter of law.

Additionally, Appellant's wrongful foreclosure claim also fails because, in order to be entitled to have a foreclosure sale set aside in Texas, a plaintiff must actually tender – not just offer to tender – the full amount owed on the note. *Lambert v. First Nat. Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App. – Ft. Worth 1999, no pet.); *Fillion v. David Silvers Co.,* 709 S.W.2d 240, 246 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e)("Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale").

In short, Appellant failed to introduce summary judgment evidence to carry his burden of proof regarding the essential elements of his wrongful foreclosure claim. The record before the Court also fails to establish that Appellant has tendered the amount due and owing to pay off the MidFirst Note. Given the foregoing, the trial court's summary judgment order denying Appellant relief under his wrongful foreclosure claim should be in all things affirmed.

**4. Does the undipsuted summary judgment evidence negate Appellant's quiet title claim as a matter of law?**

From the very outset of Appellant acquiring an interest in the Property in 2009, his interest was subordinate to the interest(s) held by MidFirst. MidFirst

18

possessed two lien interests in the Property dating back to 2004. First, MidFirst was the beneficiary of the Chestnut's purchase money deed of trust lien (Supp. CR 39). Second, MidFirst possessed the vendor's lien that was reserved within the Chestnut's Warranty Deed in favor of their lender. (Supp. CR 59). Additionally, the Special Warranty Deed into Appellant specifically provides that Appellant's interest in the Property is subject to MidFirst's Deed of Trust lien (Supp. CR 39).

Despite the title documents unmistakably confirming the superior nature of MidFirst's title, Appellant nonetheless filed suit against MidFirst asserting a quiet title claim. The elements of the cause of action to quiet title are that the plaintiff must show: (1) an interest in specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Vernon v. Perrien*, 390 S.W.3d 47 (Tex. App. – El Paso 2012, pet. denied). The plaintiff in a suit to quiet title must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference. *Wright v. Matthews,* 26 S.W. 3d 575, 578 (Tex. App. – Beamount 2000, pet. denied). A plaintiff cannot succeed in a suit to quiet title by simply basing his claim on the weakness of his opponent's title but rather he must succeed on the strength of his own title. *See generally, Fricks v. Hancock*, 45 S.W. 3d 322, 327 (Tex. App. – Corpus Christ 2001, no pet.).

While not altogether clear from Appellant's Brief, MidFirst construes Appellant's argument to be that MidFirst's foreclosure action, while facially valid, is actually defective due to the issues raised by Appellant surrounding the Assignment and the Note. MidFirst has already addressed these issues within Issues No. 1, 2 and 3 above and incorporates those prior arguments within this Section of its brief to the extent necessary. As MidFirst's lien interest in the Property was superior to that of Appellant's, and as no defect exists with the foreclosure sale, Appellant's quiet title claim fails as a matter of law. The trial court's judgment dismissing Appellant's quiet title claim should be affirmed.

5. **Did the trial court error in determining that Appellant's affirmative claim for equitable estoppel fails as a matter of law given that it is only a defensive claim and not an affirmative cause of action?**

Appellant asserts equitable estoppel as an affirmative claim against Midfirst. See, *Appellant's Brief* at 27. Appellant's argument is that MidFirst should have seen the Wally Wrap within the deed records, and once aware of the Wally Wrap, MidFirst should have known Appellant was making payments on the Property (and that it would be inequitable to foreclose on someone making payments). There are multiple problems with Appellant's argument.

First, a party is not required to constantly monitor the real property records to guard against a future filing by another party. The law does not impart any requirement on MidFirst to examine title records periodically to confirm no one

20

has attempted to destroy its lien interest in a specific piece of real property. See generally, *Biswell v. Gladney,* 213 S.W. 256, 258 (Tex.Comm'n App.1919) (A mortgagee is not charged with constructive notice of a subsequently recorded deed conveying part of the land involved.). The object of all registration acts is to affect with notice only such persons as have reason to apprehend some transfer or incumbrance prior to their own, because none arising afterwards can affect them or their estate in the land. *Cox v. Clay,* 237 S.W.2d at 804; also see, *Boucher v. Wallis,* 236 S.W.2d 519, 526 (Tex.Civ.App.—Eastland 1951, writ ref'd n.r.e.) (observing that the "purpose of [the Texas] recording laws is to notify *subsequent* purchasers ... and not to give protection to the alleged perpetrators of fraud.") (emphasis added). Appellant has cited to no authority, and no authority exists to impart a duty on MidFirst to examine deed records for an "after the fact" wally wrap.

Second, and equally damaging to Appellant's claim is that that equitable estoppel is only a defense and cannot be used as an affirmative claim. *See, Kelly v. Rio Grande Computerland Group,* 128 S.W.3d 759, 769 (Tex. App. – El Paso 2004, no pet.)(setting out that promissory estoppel can be used as an affirmative claim but equitable estoppel cannot). Equitable estoppel prevents a party from changing its position when it has misrepresented facts to another, knowing the other party would rely on the representation to their detriment. *See, Sefzik v. City*

21

*of McKinney*, 198 S.W.3d 884, 895 (Tex. App. – Dallas 2006, no pet). Nothing within the record suggests that MidFirst every misrepresented anything to Appellant, much less even knew of Appellant's existence. Further, nothing in the record suggests that MidFirst changed its position after making a representation.

There is no merit in either fact or law to Appellant's affirmative claim of equitable estoppel against MidFirst. The trial court was correct in determining that based upon the summary judgment evidence; Appellant's claim for equitable estoppel fails as a matter of law.

## V.
## PRAYER

For these reasons, Appellee MidFirst Bank respectfully requests that this Honorable Court affirm the judgment of the trial court. Appellee also requests any other relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

Hopkins & Williams, PLLC
12117 Bee Caves Rd. Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com

By:    */s/ Mark D. Hopkins*_____
      Mark D. Hopkins
      Texas State Bar No. 00793975

ATTORNEY FOR APPELLEE MIDFIRST BANK

22

## CERTIFICATE OF SERVICE

I hereby certify that Appellee's Brief for No. 03-14-00632-CV has been forwarded to the following via certified mail, return receipt requested and regular U.S. mail on this 13th day of February 2015:

**Via Regular U.S. Mail**
**And CMRRR #70121640000171145954**
William B. Gammon
Anthony G. Read
Gammon Law Office, PLLC
1201 Spyglass Drive, Suite 100
Austin Texas 78746


                                                 */s/ Mark D. Hopkins*
                                                 Mark D. Hopkins

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4.

1.     Exclusive of the exemption portions in Texas Rule of Appellate Procedure 9.4(i)(1), the brief contains: 5,035 words

2.     THE BRIEF HAS BEEN PREPARED in proportionally spaced typeface using Microsoft Word 2011 in Times New Roman font, with 14 pitch font for text and 12 pitch font for footnotes.

3.     IF THE COURT SO REQUESTS, THE UNDERSIGNED WILL PROVIDE AN ELECTRONIC VERSION OF THE BRIEF AND/OR A COPY OF THE WORD OR LINE PRINTOUT.

4.     THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESEN-TATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVEN-TION OF THE TYPE-VOLUME LIMITS IN TEXAS RULE OF APPELLATE PROCEDURE 9.4, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

_/s/ Mark D. Hopkins_
Mark D. Hopkins

## APPENDIX

**Exhibit "A"**:      Summary Judgment Order

**Exhibit "B"**:      Deed of Trust

**Exhibit "C"**      Assignment

**Exhibit "D"**      Special Warranty Deed

Notice sent: Final  Interlocutory  None
Disp Parties:_____
Disp code:  CVD / CLS _____
Redactions:_____
Judge_____  Clerk_____

DC

BK14203 PG589

Filed in The District Court
of Travis County, Texas
JUL 02 2014
At_____M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-11-000558

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | 250TH JUDICIAL DISTRICT |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER ON DEFENDANT MIDFIRST BANK'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT

On this day, the Court determined it had jurisdiction over the subject matter and the parties to this proceeding. After considering Defendant MidFirst Bank's ("MidFirst") First Amended Motion for Summary Judgment, the pleadings, the affidavits, and other evidence on file, the Court GRANTS Defendant MidFirst's first amended motion for summary judgment.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Defendant's First Amended Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that all of Plaintiff's cause of actions against Defendant MidFirst are dismissed with prejudice to the re-filing of same.

IT IS FURTHER ORDERED that Defendant MidFirst's foreclosure sale conducted on January 4, 2011 was valid, that it has a priority first lien on the Property in question, and that any interests of any secondary or junior lienholder were extinguished as a result of the foreclosure sale.

IT IS FURTHER ORDERED that Defendant, MidFirst, is entitled to possession of the premises in accordance with TEX. R. CIV. P. 310 and that Defendant MidFirst have restitution, for

ORDER ON DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT
BDFTE NO. 20100010601513



which let writ issue, of the premises commonly known as 1234 Acanthus Street, Pflugerville,

Texas 78660, and legally described, to-wit:

LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

SIGNED on ___July 2,_____, 2014.

_____
PRESIDING JUDGE

SUBMITTED BY:

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

/s/Chris Pochyla_____
Chris Pochyla
State Bar No. 24032842
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001
ChrisPO@bdfgroup.com
972-386-5040
972-341-0734 (Fax)

ATTORNEY FOR DEFENDANT
MIDFIRST BANK

2512002146
SLG/04

DT    2004136582

12 PGS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy

JUN 20 2014

D. MACHADO

When Recorded Return and Mail To:
ALETHES, LLC

12885 RESEARCH BLVD STE 202

AUSTIN, TX 78750
ATTN:

Telephone: _____
Prepared By:
GINNY MILLER
ALETHES, LLC

12885 RESEARCH BLVD STE 202,
AUSTIN, TX 78750

[Space Above This Line For Recording Data]

## DEED OF TRUST

CHESTNUT
LOAN NUMBER: ●●●●●●
CASE NUMBER: 495-7012473-703 -
MIN: 100247100002053683

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on   JULY 15, 2004          . The grantor is   TRAVIS CHESTNUT AND AMY CHESTNUT, HUSBAND AND WIFE

("Borrower"). The trustee is   ROBERT J. WILSON

whose address is   9951 ANDERSON MILL RD. #200 AUSTIN, TX 78750

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS.   ALETHES, LLC

("Lender") is organized and existing under the laws of   TEXAS
and has an address of    12885 RESEARCH BLVD STE 202 AUSTIN, TX 78750

DOCUH7X1
DOCUUTX1.VTX  01/23/2004

Page 1 of 10

FHA Texas Deed of Trust - 2/91



205368

Borrower owes Lender the principal sum of
ONE HUNDRED SIXTEEN THOUSAND FIVE HUNDRED SEVENTY-EIGHT AND 00/100
Dollars (U.S. $ 116,578.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on AUGUST 1, 2034 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
TRAVIS County, Texas:
LOT 18, BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

which has the address of 1234 ACANTHUS STREET
                                                              [Street]
PFLUGERVILLE                         Texas    78660
[City]                                                 [Zip Code]              ("Property Address");
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing, canceling or assigning this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, for (c) premiums for insurance required by Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be

JUN 2 0 2014

P. MACHADO

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy

205368

determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's accounts shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

*First*, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

*Second*, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

*Third*, to interest due under the Note;

*Fourth*, to amortization of the principal of the Note; and

*Fifth*, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

DOCUWTX).VTX   12/07/2003                     Page 3 of 10                    FHA Texas Deed of Trust - 2/91



I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

JUN 2 0 2014

Dana DeBeauvoir, County Clerk
By Deputy   P. MACHADO

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto .

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

### 9. Grounds for Acceleration of Debt.

**(a)** **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)** **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)** **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)** **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)** **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office.
Witness my hand and seal.

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

JUN 2 0 2014

successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy:

P. MACHADO

JUN 20 2014

205368

Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If after complying with all applicable statutory notice provisions Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed

DOCUMENT7
DOCUFFH7.VFX  12/07/2003
FHA Texas Deed of Trust - 2/91

hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [X] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]

**24. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

[X] **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

[ ] **Other**

**25. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the

205368

Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 25.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

- BORROWER - TRAVIS CHESTNUT - DATE -     7/15/04

- BORROWER - AMY CHESTNUT - DATE -     7/15/04

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

JUN 2 0 2014

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

205368

[Space Below This Line For Acknowledgment

State of Texas
County of Travis
This instrument was acknowledged before me on July 15, 2004 , by

TRAVIS CHESTNUT AND AMY CHESTNUT

SUSAN L. GRAHAM
MY COMMISSION EXPIRES
April 23, 2009

(Signature of Officer)
(Title of Officer)
My commission expires:

DOCUUTX10
DOCUUTXA.VTX   12/12/2003

FHA Texas Deed of Trust - 2/91

# PLANNED UNIT DEVELOPMENT RIDER

CHESTNUT
LOAN NUMBER: 205368
CASE NUMBER: 495-7012473-703-

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     15TH                    day of
JULY, 2004                         , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to     ALETHES, LLC

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

1234 ACANTHUS STREET PFLUGERVILLE, TX 78660

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

HEATHERWILDE

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

- BORROWER - TRAVIS CHESTNUT - DATE -

- BORROWER - AMY CHESTNUT - DATE -

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2004 Jul 16 12:58 PM    2004136582
EVANSK $28.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

Prepared by Sarah Fonseca
After recording return to:
MidFirst Bank
2730 N Portland
OKC, OK 73107
MFB# 53485874

1\7
2009 0010000 661

TRF  2009079539
2 PGS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy

P. MACHADO

JUN 20 2014

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC, PO Box 2026, Flint, MI, 48501-2026 (hereinafter called the "Assignor"), does hereby grant, convey, assign, transfer, and set over to MidFirst Bank, a Federally Chartered Savings Association, 999 NW Grand Blvd., Suite 100, Oklahoma City, OK 73118, (hereinafter called the "Assignee"), its successors and assigns, all of the Assignor's rights, title and interest in and to:

1. The Promissory Note (herein called the "Note"), evidencing the indebtedness secured by the Mortgage/Deed of Trust.

2. The Mortgage dated 7/16/04, executed by Travis Chestnut and Amy Chestnut, husband and wife, to Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC, recorded on 7/16/04 as Document No. 2004136582, in the Office of the Recorder, County of Travis, State of Texas, covering the following described property and all improvements as more fully described in the Deed of Trust referred to herein.

LOT 18, BLOCK 3, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN BOOK 87 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS, AS CORRECTED IN DOCUMENT NUMBER 2006198927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

Property Address: 1234 Acanthus Street, Pflugerville, TX 78660

Parcel ID: 02783606040000

In witness whereof, the undersigned corporation has caused this instrument to be executed this 22nd day of April, 2009.

Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC

Vice President          Jeri Bassett

State of Oklahoma
County Of Oklahoma

On this 22nd day of April, 2009, before me, a Notary Public, in and for said county, personally appeared Jeri Bassett, to me personally known, who being by me duly sworn did say that she is the Vice President of Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC, and that the within instrument was signed on behalf of said corporation by authority of its Board of Directors, and that they acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, executed for the uses and purposes set forth.

In testimony whereof, I have hereunto set my hand and official seal this 22nd day of April, 2009.
(Seal)

Notary Public:          Crystal Klohn
My Commission Exp          5/11/10

After Recording Return To:
Barrett Daffin Frappier Turner and Engel, LLP.
15000 Surveyor Blvd., Suite 100
Addison, TX 75001
Attn: NDEx Title Services, L.L.C.



EXHIBIT C

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

2008 May 15 10:42 AM    2008079539

HAYWOOD $20.00

DANA DEBEAUVOIR COUNTY CLERK

TRAVIS COUNTY TEXAS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

JUN 2 0 2014

Dana DeBeauvoir, County Clerk

By Deputy: P. MACHADO

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

15|ITC|0916094-RBD



## Special Warranty Deed With Vendor's Lien

KNOW ALL MEN BY THESE PRESENTS, that SMOKE SIGNAL PASS LLC ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by KARL BAILEY JR. AND REBECCA BAILEY (collectively, "Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto said Grantee, the property commonly known as 1234 Acanthus Street, Pflugerville, TX 78660, and further described as

Lot 18, Block B, HEATHERWILDE, SECTION THREE, A SMALL LOT SUBDIVISION, according to the map or plat thereof, recorded in Volume 87, Page 57C, Plat Records, Travis County, Texas.

(together with all improvements, rights and appurtenances, the "Property")

This conveyance, however, is made and accepted subject to the Vendor's Lien retained in Deed recorded as Document No. 2004136581 in the Official Public Records of Travis County, Texas, the Deed of Trust recorded as Document No. 2004136582 in the Official Public Records of Travis County, Texas, and assigned by instrument recorded as Document No. 2009079539 in the Official Public Records of Travis County, Texas, and any and all validly existing encumbrances, conditions and restrictions, relating to the Property as now reflected by the Official Public Records of Travis County, Texas.

A portion of the consideration to be paid to Grantor was advanced by Grantor at the special instance and request of Grantee, which amount constitutes a portion of the proceeds of a loan from Grantor to Grantee evidenced by those certain Notes Secured by Wraparound Mortgage of even date herewith executed by Grantee in the aggregate original principal amount of One Hundred Twenty-One Thousand Fifty and No/100 Dollars ($121,050.00) (the "Notes"). The Notes are secured by the vendor's lien and superior title herein retained by Grantor and by the lien created by that certain Deed of Trust (Wraparound Mortgage), dated as of even date herewith executed, by Grantee in favor of Drew Shirley, P.C., Trustee, for the benefit of Grantor, covering the Property.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said Grantee, its successors and assigns, forever. And Grantor does hereby bind itself and its successors to WARRANT and FOREVER DEFEND all and singular the Property unto said Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTOR AND GRANTEE AGREE THAT GRANTEE IS TAKING THE PROPERTY "AS IS" WITH ANY AND ALL LATENT AND PATENT DEFECTS AND THAT THERE IS NO WARRANTY BY GRANTOR THAT THE PROPERTY IS FIT FOR A PARTICULAR PURPOSE. GRANTEE ACKNOWLEDGES THAT GRANTEE IS NOT RELYING UPON ANY REPRESENTATIONS, STATEMENTS, ASSERTIONS, OR NON-ASSERTIONS BY THE GRANTOR WITH RESPECT TO THE PROPERTY CONDITION, BUT IS RELYING SOLELY UPON ITS EXAMINATION OF THE PROPERTY. GRANTEE TAKES THE PROPERTY UNDER THE EXPRESS UNDERSTANDING

Special Warranty Deed With Vendor's Lien – Page 1



THAT THERE ARE NO EXPRESS OR IMPLIED WARRANTIES (EXCEPT FOR THE LIMITED WARRANTIES OF TITLE SET FORTH HEREIN).

But it is expressly agreed and stipulated that the Vendor's Lien is retained against the Property until the above-described Notes, and all interest thereon, are fully paid according to its face and tenor, effect and reading, when this Deed shall become absolute.

This Special Warranty Deed with Vendor's Lien is EXECUTED to be effective as of the 31st day of July, 2009.

GRANTOR:

SMOKE SIGNAL PASS LLC

By:  , Manager
 Eric J. Lee, Manager

STATE OF TEXAS     §
                      §
COUNTY OF TRAVIS   §

This instrument was acknowledged before me on July 31, 2009, by Eric J. Lee, Manager of Smoke Signal Pass LLC.

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Karl and Rebecca Bailey
1234 Acanthus Street
Pflugerville, TX 78660

Independence Title Company
11215 S. IH35, Ste. 114
Austin, TX 78747

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2009 Aug 12 12:03 PM    2009136933
PEREZTA $20.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

Special Warranty Deed With Vendor's Lien – Page 2

JUN 2 3 2014

P. MACHADO

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy